UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Dominique Edgerson,

      Plaintiff,

v.                                                          Honorable Sean F. Cox

City of Southfield, *et al.*,                              Case No. 10-14954

      Defendants.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Plaintiff brought this § 1983 action against the City of Southfield, Michigan, and two of its police officers, alleging that the officers violated his constitutional rights by using excessive force on December 19, 2007.   The matter is currently before the Court on Defendants' Motion for Summary Judgment. The parties have briefed the issues and the Court heard oral argument on May 17, 2012.  For the reasons set forth below, the Court shall GRANT THE MOTION IN PART AND DENY THE MOTION IN PART.  The Court shall GRANT the motion to the extend that it shall: 1) dismiss all claims against Defendant Porter because he is entitled to qualified immunity; 2) dismiss Count II, which asserts § 1983 claims against the City of Southfield, because Plaintiff cannot establish municipal liability; and 3) dismiss Count III, which purports to assert a claim for "gross negligence" because that claim is not cognizable under Michigan law.  The Court shall DENY the motion to the extent that it rules that Defendant Matatall is not entitled to qualified immunity at the summary judgment stage.

## BACKGROUND

On December 14, 2010, Plaintiff Dominique Edgerson filed this action against

Defendants City of Southfield, and two of its police officers, Blake Matatall, and Lawrence

Porter.  Plaintiff's complaint asserts the following claims: "Violation of the Fourth Amendment

42 U.S.C. § 1983 – Excessive Force" (Count I); "Gross Negligence" (Count II); and "City of

Southfield's Constitutional Violations" (Count III).  Plaintiff's complaint alleges the following

underlying facts:

> 10.    In the early afternoon hours of December 19, 2007, Plaintiff and another
>        individual were in an automobile and driving in the City of Southfield.
> 11.    A car chase ensued, and the vehicle Plaintiff was in came to a stop in the
>        City of Detroit.
> 12.    Plaintiff exited the vehicle and began to run away from Defendants.
> 13.    During this time, Defendant Porter radioed that Plaintiff was armed with a
>        weapon, which was not true.
> 14.    Plaintiff did not have any weapon on his person during the incident
>        complained of.
> 15.    After Plaintiff was approximately ten (10) feet from the automobile he
>        was in, he slipped and fell on some ice that was on the ground.
> 16.    When Plaintiff fell, he fell on his stomach, and his hands were over his
>        head, with a cell phone on the ground next to him; yet Defendant Matatall
>        shot him.
> 17.    When Plaintiff fell and was on the ground, Defendant Matatall open fired
>        on him, hitting him numerous times, even though Plaintiff did not have a
>        gun on his person and never made any threatening gestures.

(Compl. at 2-3).

Following the close of discovery, Defendants filed the instant Motion for Summary

Judgment.  This Court's practice guidelines for motions for summary judgment provide, in

pertinent part, that:

> a. The moving party's papers shall include a separate document entitled
> Statement of Material Facts Not in Dispute.  The statement shall list in separately
> numbered paragraphs concise statements of each undisputed material fact,
> supported by appropriate citations to the record. . .

2

b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

The parties complied with the Court's practice guidelines for motions for summary judgment such that: 1) along with Defendants' Motion for Summary Judgment, Defendants filed a "Statement of Material Facts Not In Dispute" ("Defs.' Stmt.") and 2) along with Plaintiff's Response, Plaintiff filed his "Counter-Statement of Disputed Facts" (Pl.'s Stmt.").

The following material facts are gleaned from the parties' statements and the evidence submitted by the parties, *taken in the light most favorable to Plaintiff.*

Officer Matatall and Sergeant Porter are police officers with the Southfield Police Department and were so employed on December 19, 2007.  (Defs.' Stmt. at ¶ 1; Pl.'s Stmt. at ¶ 1).  Matatall and Porter were acting as police officers during the events in question.  (Defs.' Stmt. at ¶ 2; Pl.'s Stmt. at ¶ 2).

On December 19, 2007, Matatall initially pursued a vehicle occupied by Plaintiff and Eric Williams because the vehicle matched the description of a vehicle involved in a previous incident with officers on December 17, 2007, including that it had no license plate, it had collision damage consistent with the prior incident, and it fled at a high rate of speed when Matatall pulled along side the vehicle on December 19, 2007.  (Ex. A to Defs.' Br.; Defs.' Stmt. at ¶ 3; Pl.'s Stmt. at ¶ 3).

3

The vehicle pursuit was terminated by Matatall intentionally colliding with the GMC Yukon. (Defs.' Stmt. at ¶ 5; Pl.'s Stmt. at ¶ 5). When the pursuit terminated, both Plaintiff and Williams fled on foot. (Defs.' Stmt. at ¶ 6; Pl.'s Stmt. at ¶ 6).

Porter fired several shots at Williams, however, no person was struck by this gun fire. (Defs.' Stmt. at ¶ 11 Pl.'s Stmt. at ¶ 11). Despite shots being fired by Porter, both Plaintiff and Williams continued to flee in different directions. (Defs.' Stmt. at ¶ 12 Pl.'s Stmt. at ¶ 12). Porter yelled warnings to Matatall and other responding officers, verbally and via radio, that both subjects were armed. (Defs.' Stmt. at ¶ 13 Pl.'s Stmt. at ¶ 13).

Williams was apprehended by Porter after a short foot pursuit and a pistol was recovered a few feet away from him. (Defs.' Stmt. at ¶ 14; Pl.'s Stmt. at ¶ 14). Williams admits that he was armed with a handgun during the incident. (Defs.' Stmt. at ¶ 15; Pl.'s Stmt. at ¶ 15).

The parties have very different accounts of the facts surrounding the apprehension of Plaintiff. Because the Court must construe the facts in a light most favorable to Plaintiff, the non-moving party, Plaintiff's testimony is included here.[1]

Plaintiff testified that after he exited the vehicle he ran away from the vehicle (Pl.'s Dep. at 79). While Plaintiff was running, he had a gray Motorola KRZR cell phone in his right hand. (Pl.'s Dep. at 87 & 88). Plaintiff testified that while he was running he did not turn to look back to see if the police were chasing him. (Pl.'s Dep. at 89). He testified that after he had run

---

[1]In order to provide some context as to Defendants' motion, however, the Court notes that Matatall testified that while he was chasing Plaintiff, just before he starting shooting at Plaintiff, Plaintiff turned back towards him and took a "shooter's stance where you put both hands up and extend your arms holding a single object." (Matatall Dep. at 63-64 & 67-68). In addition, a witness on the scene, Eric Plater, testified consistent with Matatall's version of events.

4

approximately five to ten feet from the vehicle, he slipped and fell on some snow and ice.  (Pl.'s

Dep. at 79 & 82).  He testified he fell face first (i.e. face towards the ground) (Pl.'s Dep. at 82-

83).  He testified that he remained on the ground, face first, and that "[b]asically I was

surrendering."  (Pl.'s Dep. at 83).  Plaintiff testified that "once I fell, I knew that I was, you

know, caught.  I couldn't run no more" and that "[a]t that point I'm just – just there, sort of, you

know, surrendered, like you know, face down."  (Pl.'s Dep. at 89).  He testified that after he fell,

his hands were outstretched above him.  (*Id.* at 132).  He also testified that his cell phone fell out

of his hand when he fell and it was laying on the ground beside him.  (*Id.*).  Plaintiff further

testified as follows:

> Q.     All right.  So you're saying that at – at no time then on December 19,
>        2007, while you were running from the police do you point your arm in
>        the direction of the police officer who's chasing you?
> A.     No, sir.
> . . . .
> Q.     In other words, are you saying, No, I know definitely that didn't happen,
>        or I don't remember that happening?
> A.     No, I definitely know I never turned my hand – I never turned around nor
>        turned my hands in the opposite way.  I maintained.  I was going forward
>        away from the vehicle, and then that's when I fell and was surrendering.
> . . . .
>
> Q.     Did you ever physically assault any officers on December 19?
> A.     No, sir.
> Q.     Did you ever verbally assault any officers on December 19?
> A.     No, sir.
> Q.     Did you ever make any sudden movements or gestures towards them on
>        December 19?
> A      No, sir.
> . . . .
>
> Q.     . . . Do you remember turning back toward the officers?
> A.     No, sir.
> Q.     But you did have a cell phone in your hand, correct?
> A.     Correct.
> Q.     Did you ever aim your cell phone at an officer?

       A.      No, sir.

       Q.      Did you ever aim or point your arm or finger at an officer as if you were going to shoot at them?

       A.      No.

       Q.      At the time you were running from the police did you know he was a police officer?

       A.      Yes.

       Q.      Okay.  Did you make the presumption that he would have had a gun?

       A.      Yes, I'm sure he had a gun.

       Q.      At any time during the time that you were running did you stop, turn your entire body around, lift up your arm with the cell phone, and aim the cell phone at an officer?

       A.      No, sir.

(Pl.'s Dep. at 113, 115, 121, 130-31).  Plaintiff testified that he was shot while he way laying

down.  (*Id.* at 12)

It is undisputed that Porter did not shoot Plaintiff.  (Defs.' Stmt. at ¶ 18; Pl.'s Stmt. at ¶

18).

The City of Southfield has various policies in place, including policies regarding the use

of firearms.  The City of Southfield's policy regarding a police officer's use of firearms limits

the use of such force to circumstances in which the officer believes a person to be armed who

poses an immediate risk of endangering the physical safety of others.  (Ex. G to Defs.' Br.).

## STANDARD OF DECISION

Summary judgment is proper when there are no genuine issues of material fact in dispute

and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  In

deciding a motion for summary judgment, the court must view the evidence and draw all

reasonable inferences in favor of the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

I.      **Are The Individual Defendants Entitled To Qualified Immunity?**

To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law. *Dominguez v. Correctional Medical Services,* 555 F.3d 543, 549 (6th Cir. 2009).

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.; Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation. *Dominguez*, 555 F.3d at 549.

"[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

Here, Defendants have raised the issue in the instant Motion for Summary Judgment, filed after the close of discovery.

The only Constitutional violation that Plaintiff alleges as to the individual Defendants in his complaint is that the officers used excessive force.


A.      **Viewing The Facts In The Light Most Favorable To Plaintiff, Has Plaintiff Established A Constitutional Violation As To Either Officer?**

"In step one of the qualified immunity analysis, the court determines whether th[e] evidence produced by plaintiff, taken in the light most favorable to plaintiff but viewed from the perspective of a reasonable officer on the scene, establishes a claim of excessive force in violation of the Constitution." *Grawey, supra*. In determining whether an excessive force constitutional violation occurred, the court "must look at the objective reasonableness of the defendant's conduct, 'which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Id.* (quoting *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007)). "Among the most important factors to consider in determining the objective reasonableness of the force used are: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Grawey, supra*.

Here, Plaintiff asserts his excessive force claim against two different officers, Porter and Matatall.

"Each defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Generally, mere presence at the scene, without a showing of direct responsibility for the action, will not subject an officer to liability. *Id.* "To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer '(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Id.* (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). With respect to an officer who fails to prevent the use of force by another, liability only attaches where the officer:

8

1) observed or had reason to know that excessive force would be or was being used; and 2) had

both the opportunity and the means to prevent the harm from occurring. *Kijowski v. City of*

*Niles*, 372 Fed.Appx. 595, 599 n.8 (6th Cir. 2010); *Turner, supra*.

### 1.      Is Defendant Porter Entitled To Qualified Immunity?

In their motion, Defendants contend that Porter is entitled to qualified immunity because

it is undisputed that Porter did not shoot or injure Plaintiff.  Defendants note that Plaintiff

testified, as to Porter, that Porter did nothing to him:

> Q.      Do you have any reason to believe that Sgt. Porter shot you?
> A.      No
> Q.      But you've named him as a defendant in this case.
> A.      Yes.
> Q.      Why is that?
>         MR. CABOT: Objection.  Calls for a legal conclusion.
> BY MR. ROULAND:
> Q.      If you know.
> A.      I believe he was part of the case because he was on the scene as well.
> Q.      What did he do to you personally?
> Q.      Oh, personally, he didn't do nothing to me.

(Pl.'s Dep. at 109-10).  Defendants contend that Porter is entitled to qualified immunity because

he did not personally cause a deprivation of any constitutional right.

In response, Plaintiff makes two arguments.  First, he asserts that "[a]lthough Defendant

Porter did not shoot Plaintiff, he told Defendant Matatall that Plaintiff was armed with a gun,

when Plaintiff did not have a gun."  (Pl.'s Resp. at 7).  Porter's communication to other officers

of his belief that Plaintiff was armed, however, does not amount to a constitutional violation.

Second, Plaintiff makes assertions as to Porter's role in the vehicle chase that preceded

the events at issue and asserts that Porter is not entitled to qualified immunity based on his

actions relating to the vehicle chase.  This argument is entirely misplaced.  The only

constitutional violation alleged as to the individual officers in Plaintiff's complaint is excessive force. Plaintiff's complaint does not allege that the officers violated Plaintiff's Fourteenth Amendment substantive due process rights by virtue of actions they took during the police chase.[2]

Accordingly, the Court shall grant summary judgment in favor of Porter because he is entitled to qualified immunity.

### 2.    Is Defendant Matatall Entitled To Qualified Immunity?

Next, Defendants argue that Matatall is entitled to qualified immunity because his conduct was objectively reasonable under the facts he encountered. In doing so, however, Defendants first ask the Court to view the facts consistent with Matatall's testimony (i.e. that Plaintiff did not take a surrender posture but "[i]nstead Plaintiff turned and faced Officer Matatall and took a stance as if firing a firearm.") (Defs.' Br. at 7). Defendants also note that Plater, who they assert is a "completely independent witness," testified consistent with Matatall's testimony.

In assessing this motion, however, the Court may not make credibility determinations and the Court must construe the evidence in the light most favorable to Plaintiff, the non-moving party. Defendants then take the position that even if Plaintiff had not pointed at Matatall, his

---

[2]Moreover, even if he had pled such a claim, the facts of this case would simply not meet the "shocks the conscience" standard that applies to such claims. *See Jones v. Byrnes,* 585 F.3d 971 (6th Cir. 2009) (Ruling plaintiff had not made prima facie case of deprivation of his substantive due process rights where he had not produced any evidence that the officers "were acting with any intent to harm the suspect instead of trying to apprehend what they reasonably believed to be dangerous criminals" and noting that while "*Lewis* established in 1998 that an officer's conduct in a police chase could theoretically shock the conscience," there have not yet been any cases wherein that standard has actually been met.)

actions would still be reasonable, asserting that "[a]bsent the issue of the pointing, Officer

Matatall would be justified in shooting Plaintiff as a fleeing felon."  (Defs.' Br. at 9).  But

Plaintiff's testimony includes more than just his testimony that he did not point at Matatall.

      Plaintiff argues that when the evidence in viewed in the light most favorable to him,

excessive force was used under the facts alleged here:

> Plaintiff testified that as he was running from Defendant Matatall, he slipped and
> fell due to icy and snowy conditions.  (Ex. A. pp. 79-81).  When Plaintiff fell, he
> fell face forward with his hands above him in an obvious surrender position.  (Ex.
> A. p. 82).  At this point, Plaintiff was clearly not a threat to Defendant Matatall or
> anyone else.  After Plaintiff had fallen, and with his hands above him in a
> surrender position, Defendant Matatall shot him.  (Ex. A pp 83-84).  Due to the
> fact that Plaintiff had fallen and his hands were extended over his head in a
> surrender position, no reasonable officer could have believed that Plaintiff
> "pose[d] a threat a serious physical harm" to the officers or anyone else.  *See*
> *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  As such, this firing of multiple
> gunshots at Plaintiff while he was in a surrender position, is clearly and obviously
> excessive and unreasonable.

(Pl.'s Resp. at 8-9).  In addition, while Plaintiff had a silver object in his hand when he was

running, Plaintiff testified that, when he fell, his cell phone fell out of his hand and was lying on

the ground next to him. Plaintiff testified that when he was shot, he had already fallen and his

hands were extended above his head.

      In their Reply Brief, Defendants improperly raise a new argument not raised in their

opening brief – that Plaintiff's version of events is contrary to his medical records.  (*See* Defs.'

Reply Br. at 1).  Not only is this argument improperly raised for the first time in their Reply

Brief, but the Court fails to see how the Exhibit submitted in support of this argument establishes

that Plaintiff's testimony that he was lying down when he was shot cannot possibly be true.

      Viewing the evidence in the light most favorable, as the Court must, the Court concludes

that Plaintiff has established a constitutional violation as to Defendant Matatall.

**B.      If So, Was The Right Clearly Established At The Time Of The Violation?**

Under the second step of the qualified immunity analysis, the Court must determine whether the right was clearly established at the time of the violation.  "Under this circuit's existing case law, there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others."  *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009).

Accordingly, Defendant Matatall is not entitled to qualified immunity with respect to Plaintiff's excessive force claim.

**II.      Should The City Be Dismissed Because Plaintiff Cannot Establish Municipal Liability?**

Defendants' motion asserts that Count III, which asserts a § 1983 claim against the City of Southfield, must be dismissed because Plaintiff cannot establish municipal liability.

A local government is only liable under § 1983 for its own wrongdoing and not under any theory of respondeat superior.  A municipality may, however, "be held liable under § 1983 if it maintained a policy or custom that caused the violation" of the plaintiff's rights.  *Harvey v. Campbell County*, 453 Fed.App'x 557, 562 (6th Cir. 2011).

"A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must identify the policy, connect the policy to the County itself and show that the particular injury was incurred because of the execution of that policy."  *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004).

Here, however, Plaintiff does not base his claim against the City on any actual custom or policy.  Rather, Plaintiff's § 1983 claim against the City of Southfield is a claim predicated upon

12

a "failure to train" theory of municipal liability.  (*See* Pl.'s Resp. at 10).

In limited circumstances, a local government's failure to train police officers may be deemed a "policy or custom" for purposes of municipal liability.  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  "[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact*.*"  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."  *Id.*

Specifically, Plaintiff must show three elements: 1) that Matatall's training was inadequate to prepare him for the tasks that officers in his position must perform; 2) that the inadequacy persisted due to the City's "deliberate indifference"; and 3) that the inadequacy is closely related to or actually caused Plaintiff's injury.  *Harvey*, 453 Fed.App'x at 562.

Among other things, Plaintiff has not established that Matatall's training was inadequate to prepare him for the tasks that officers in his position must perform.

Plaintiff claims that the City "has failed to adequately and/or sufficiently train Defendant Matatall as to the use of force and squad car maneuvers."  (Pl.'s Resp. at 10).

Again, Plaintiff has not alleged that the officers violated Plaintiff's Fourteenth Amendment substantive due process rights by virtue of actions they took during the vehicle chase.  The only constitutional violation that Plaintiff has alleged is that the officers used excessive force in shooting at Plaintiff after he fell to the ground and maintained a surrender position.  Any alleged insufficient training regarding squad car maneuvers, could not have

13

caused the alleged constitutional injury.

Plaintiff also asserts that the City has failed to adequately train officers regarding the proper use of force but it has offered no evidence in support of that assertion in response to Defendants' motion.  (*See* Pl.'s Resp. at 10).  Moreover, during his deposition, Matatall testified as follows regarding the training he has received:

> Q. Have you ever had any training regarding use of force?
> A. Yes.
> Q. When?
> A. I went to the police academy in 2004 and numerous activity – or training involving use of force there.  I worked for Oak Park Police Department, received extensive training from Oak Park, and extensive training from Southfield also.
> Q. How often do you receive use of force training at Southfield?
> A. Periodically.
> Q. What does that mean, once every other year, once –
> A. At least –
> Q. – a year, twice a year?
> A. At least once a year and I read up a lot on training.
> Q. And what type of force training do you get this one time a year, is it like you sit in a class and somebody lectures, is it lecture and hands-on, is it a mixture of both?
> A. It's usually mixture of both – both.  They go over our policies, they go – sometimes they bring a lawyer or prosecutor in to review – review the force policy and then we get hands-on training.

(Matatall Dep. at 16-17).

Rather than present evidence to establish that the training provided by the City of Southfield is in adequate, Plaintiff's brief simply asserts that others have filed lawsuits against Matatall for allegedly using excessive force.

"These allegations do not do the trick."  *Smith v. City of Akron*, 2012 WL 1139003 at * 3 (6th Cir. 2012).  Even if Matatall failed to follow the City's policies regarding use of force, that would not "show a failure to train because an individual 'officer's shortcomings may have

14

resulted from factors other than a faulty training program.' *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989)." *Smith, supra* at *3. Moreover, the previous lawsuits against Matatall also speak to alleged shortcomings of the officer, "not to shortcomings in the training [he] received." *Id.*

Accordingly, the Court shall dismiss Count III because Plaintiff cannot establish municipal liability.

### III.    Should Plaintiff's Gross Negligence Count Be Dismissed?

Finally, Defendants challenge Plaintiff's gross negligence claim. Defendants assert that there is no separate cognizable claim for "gross negligence" under Michigan law and that any gross negligence claim asserted by Plaintiff is simply an excessive force claim improperly reasserted as a negligence claim.

In response, Plaintiff asserts that Defendants' conduct meets the definition of gross negligence, but Plaintiff does not respond to Defendants' argument that a separate gross negligence claim is not cognizable under Michigan law.

The Court agrees that a separate "gross negligence claim," is not cognizable under Michigan law under these circumstances. *See Vanvorous v. Burmeister*, 262 Mich.App. 467, (2004); *Livermore v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007); *Miller v. Sanilac County*, 606 F.3d 240, 254 (6th Cir. 2010).

Accordingly, the Court dismiss Count II of Plaintiff's complaint.

CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED to the

extent that the Court: 1) DISMISSES all claims against Defendant Porter, because he is entitled

to qualified immunity; 2) DISMISSES Count II, which asserts § 1983 claims against the City of

Southfield, because Plaintiff cannot establish municipal liability; and 3) DISMISSES Count III,

which purports to assert a claim for "gross negligence" because that claim is not cognizable

under Michigan law.  The motion is DENIED in all other respects.

   IT IS SO ORDERED.


        S/Sean F. Cox       
        Sean F. Cox
        United States District Judge

Dated:  May 23, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on
May 23, 2012, by electronic and/or ordinary mail.

        S/Jennifer Hernandez     
        Case Manager